United States Courts
Southern District of Texas
**FILED**

**DEC 1 1 2023**

Nathan Ochsner, Clerk of Court

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO.** H-21-268-3 |
| | § | |
| **LARON CLIFFORD CURTIS,** | § | |
| Defendant. | § | |

### PLEA AGREEMENT

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas, and Richard D. Hanes, Assistant United States Attorney, and the defendant, Laron Clifford Curtis ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and/or 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the indictment. Count One charges Defendant with Conspiracy to Possess with Intent to Distribute Marijuana, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(C). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(C), is imprisonment of not more than 20 years and a fine of not more than $1,000,000. Additionally, Defendant may receive a term of supervised release after imprisonment of at least 3 years. *See* Title 18, United States Code, Sections 3559(a) (3) and 3583(b) (2). Defendant acknowledges and understands that if he should violate the conditions of

any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than 2 years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(3)) and 3583(e)(3). Defendant understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3.   Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Cooperation

4.   The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, and fully cooperate with the United States. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

5.   Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to the theft or diversion of mail matter trafficking in controlled substances. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)   Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)   Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)   Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)   Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)   Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f)   Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

**Waiver of Appeal, Collateral Review, and Statute of Limitations**

6.   Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction

3

and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

7. Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive.

Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9.   Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

10.   The United States agrees to each of the following:

(a)     If Defendant pleads guilty to Count One of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

(b)     If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas Only

11.   The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States

5

Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

12.   The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)      to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)      to set forth or dispute sentencing factors or facts material to sentencing;

(c)      to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)      to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)      to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

13.   Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is

6

within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

14.   Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)   If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)   At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.   If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)   At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

16.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

7

Beginning in February of 2020 and ending August 18, 2020, postal employees Ezequiel Garcia-Powell and Isiah Franklin, IV, and non-employees Christopher Alexander Burns and Laron Clifford Curtis did traffic marijuana between California and Houston, Texas utilizing the U.S. mail.

On December 4, 2019, while conducting an audit of mail activity in zip code 77022 for evidence of collusion between postal employees in the trafficking of narcotics, USPS OIG Special Agent Anthony Tomasino noticed that Ezequiel Garcia-Powell, a carrier at Oak Forest Station, Houston, Texas, had an unusually high number of suspected narcotics parcels on his route. The parcels originated in California. Tomasino noted that those parcels were being scanned as "delivered" a significant distance from the delivery address on the parcel.

On February 25, 2020, SA Tomasino was alerted to the fact that there were eight (8) suspected narcotics parcels originating in California and destined for delivery on Garcia-Powell's route. The parcels were all mailed in two transactions, paid for in cash, and addressed to recipients located on Garcia-Powell's route, 77002-C012.

On February 26, 2020, SA Tomasino determined that seven (7) of the eight (8) parcels had been scanned "Out for delivery." SA Tomasino and SA Ryan Haywood conducted surveillance of Garcia-Powell as he serviced his route that day. At 12:28PM, SA Haywood saw that while delivering on Palmyra Street, near Bauman, a white BMW, Texas license plate LWN-1763, backed up to the rear of Garcia-Powell's postal vehicle. The BMW's trunk opened, and the driver of the vehicle exited the vehicle. Garcia-Powell was seen closing the trunk of the BMW, after which the driver got back into the vehicle and left the scene. SA Tomasino ran a registration check on the BMW which revealed that the vehicle was registered to Christopher Alexander Burns, 2700

8

Woodland Park Drive, #1224, Houston, Texas 77082.

On February 26, 2020, SA Tomasino learned that six (6) suspected narcotics parcels had arrived from California. Again, the parcels were shipped in two (2) transactions, paid for in cash, and addressed to recipients on Garcia-Powell's route.

On February 27, 2020, SA Tomasino was alerted that the six (6) suspected narcotics parcels were out for delivery. SAs Tomasino and Haywood again set out to surveil Garcia-Powell as he ran his delivery route. At 12:36PM, Garcia-Powell again met with the white BMW, which backed up to the mail truck and opened its trunk. As agents watched, Garcia-Powell loaded parcels from the back of the mail truck to the trunk of the BMW. The driver of the BMW never exited the vehicle. Minutes after it had stopped by the mail truck, Garcia-Powell closed the trunk and the BMW drove away.

On February 28, 2020, SA Tomasino was alerted to the arrival of four (4) suspected narcotics parcels from California, with recipients on Garcia-Powell's route.

On March 3, 2020, Postal Inspector Angela Daniel obtained a federal search warrant for one of the parcels, #9505 5156 2334 0057 2377 43. Upon execution of the warrant, agents discovered two (2) vacuum sealed bags containing suspected marijuana. A field test confirmed that it was marijuana. The gross weight of the marijuana was 2 pounds, 9.4 ounces.

On March 3, 2020, SAs Tomasino and Haywood again conducted surveillance of Garcia-Powell as he ran his route. At 11:55AM, agents saw the mail truck meet a white BMW, this time with Texas MMG-9515 license plate, in the parking lot of La Michoacán Meat Market, 7502 Fulton Street, Houston, Texas 77022. As agents watched, Garcia-Powell loaded multiple parcels from the back of the mail truck into the trunk of the BMW. Garcia-Powell was then seen standing

near the BMW speaking to the driver. SA Tomasino ran the registration of the BMW and found the owner to be Laron Curtis.

On March 5, 2020, SA Tomasino was alerted to the arrival from California of three (3) parcels destined for delivery on Garcia-Powell's route. All parcels were mailed through a single transaction, paid for in cash.

On March 6, 2020, SA Tomasino determined that the three (3) parcel were scanned "out for delivery." Tomasino contacted the Oak Forrest Station and spoke to Station Manager Homer Samuel. Samuel advised that Garcia-Powell was not working that day. Samuel also advised that he had searched the mail truck and the station and could not find the packages. It was later determined after the arrest of Garcia-Powell and through examination of Garcia-Powell's text messages that Garcia-Powell had texted another USPS employee, Isiah Franklin, IV, and asked him to remove the packages from the mail-stream and bring them to him (Garcia-Powell).

On March 11, 2020, SA Tomasino and OIG Technical Operations Officer Sam Yip installed hidden cameras in Garcia-Powell's postal vehicle, one in the front to capture activity with the driver and one in the rear to capture activity behind the vehicle.

On March 12, 2020, SA Tomasino was alerted to the arrival of five (5) parcels from California, mailed together from the same post office, paid for in cash, and addressed to recipients on Garcia-Powell's route.

On March 19, 2020, SA Tomasino was alerted that four (4) parcels had arrived from California, all mailed from the same post office, paid for in cash, and destined for delivery on Garcia-Powell's route. On March 20, 2020, the parcels were listed as "out for delivery" from the Oak Forest Station.

SAs set surveillance on Garcia-Powell as he ran his route on March 20, 2020. At 11:20AM,

Tomasino and Haywood see Burns' BMW pull up briefly beside Garcia-Powell in his mail vehicle,

before each vehicle goes its separate way.

On April 16, 2020, SA Tomasino was alerted to the arrival of three (3) parcels from

California, paid for in cash from one post office, and destined to be delivered on Garcia-Powell's

route. On April 18, 2020, all of these parcels were reported "out for delivery." On April 27, 2020,

SA Tomasino reviewed the surveillance video from the cameras installed in Garcia-Powell's postal

vehicle. The video showed Garcia-Powell loading three (3) parcels from the rear of his postal

vehicle and placing them into a BMW registered to Laron Curtis. This took place at 12:56PM.

On April 24, 2020, SA Tomasino was alerted to the arrival of four (4) parcels from

California, mailed from two different transactions, both paid in cash, and destined for delivery on

Garcia-Powell's route. On April 28, 2020, all four parcels were listed as "out for delivery." SA

Tomasino reviewed the surveillance video from the cameras installed in Garcia-Powell's postal

vehicle and at approximately 1:16PM, Garcia-Powell is seen pulling into a parking lot, getting out

of his postal vehicle and walking to the rear of the vehicle where he is seen handing four parcels

to an unidentified black male. Garcia-Powell then gets in his postal vehicle and leaves.

On June 4, 2020, SA Tomasino was alerted to the arrival of four (4) parcels from California,

mailed in the same transaction, paid in cash, and destined for delivery on Garcia-Powell's route.

On June 8, 2020, the four parcels were listed as "out for delivery." SA Tomasino reviewed

surveillance video from the two cameras in Garcia-Powell's postal vehicle for June 8th. At 1:52PM,

Garcia-Powell's postal vehicle is seeing meeting a person in a BMW matching the description of

Burns' BMW. The two vehicles then drive a short distance to a parking lot where the video records

11

Garcia-Powell taking the parcels out of the back of the postal vehicle and putting them in the trunk of the BMW. By 1:54PM, the vehicles part.

On June 10, 2020, SA Tomasino was alerted to the arrival of four (4) parcels from Fullerton, California, mailed from the same post office at the same time, paid for in cash and destined for delivery on Garcia-Powell's route. On June 12, 2020, one of the parcels was listed as "out for delivery."  SA Tomasino reviewed surveillance video from the cameras in Garcia-Powell's postal vehicle for June 12, 2020. At 2:54PM, a white BMW matching the description of that owned by Burns is seen driving up beside Garcia-Powell's mail vehicle. Garcia-Powell is seen handing a parcel out the window to the person in the BMW, and the vehicles part.

Investigating the disposition of the remaining three parcels, SA Tomasino discovers that these were listed as "delivered Front Door/Porch" on June 13, 2020 at 1:02PM. SA Tomasino reviewed video taken from the two cameras in Garcia-Powell's postal vehicle on June 13, 2020. At approximately 12:54PM, Garcia-Powell is seen pulling into a parking lot where he is seen meeting Laron Curtis who is driving his white BMW. Garcia-Powell is seen scanning the three parcels and giving them to Curtis who puts them in his trunk.

On June 16, 2020, SA Tomasino was alerted to the arrival of five (5) parcels from Los Angeles, California, mailed from the same post office, paid in cash, and destined for delivery on Garcia-Powell's route. Further investigation revealed that four of the five parcels had been scanned as "Delivered In/At Mailbox" on June 19, 2020 at approximately 2:41PM.  SA Tomasino reviewed surveillance video from the two cameras in Garcia-Powell's mail vehicle. The video showed that on June 19, 2020 at 3:16PM, Garcia-Powell pulled into a parking lot next to a BMW matching the description of that driven by Burns, where Garcia-Powell handed four parcels to the person in the

BMW.

On June 18, 2020, SA Tomasino was alerted to the arrival of three (3) parcels from Los Angeles, California, all mailed at the same time, paid for in cash, and destined for delivery on Garcia-Powell's route. Further investigation revealed that all 3 parcels were scanned "out for delivery" on June 22, 2020 and scanned "Delivery In/At Mailbox" on that date at 1:19PM. SA Tomasino reviewed the surveillance video from the two cameras in Garcia-Powell's postal vehicle for June 22, 2020. The video showed Garcia-Powell meeting with a person in a white BMW at 1:18PM. Garcia-Powell exits the postal vehicle and goes to the rear where he removes numerous parcels and places them in the trunk and the rear seat of the BMW. Garcia-Powell then received something from the driver of the BMW, after which they went their separate ways.

On August 13, 2020, SA Tomasino was alerted to the arrival of five (5) parcels from Los Angeles, California, mailed at two separate times, paid for in cash, and destined for delivery on Garcia-Powell's route.

On August 14, 2020 SA Tomasino obtained five (5) federal search warrants for five (5) of the parcels. Upon opening the parcels, they were all found to contain marijuana with a total gross weight of 7 pounds.

On August 17, 2020, SA Tomasino was alerted to the arrival of five (5) more parcels matching the description of previous packages of suspected narcotics. SA Tomasino obtained a federal tracker warrant which would allow him to place a tracker in the parcel which would alert when the parcel was opened.

On August 18, 2020, SA Tomasino, along with other OIG agents, Postal Inspectors and Texas Department of Safety State Troopers planned to do a surveillance and arrest operation on

Garcia-Powell who was in possession of 10 parcels of suspected narcotics. Surveillance officers observed Garcia-Powell as he entered the parking lot of La Michoacán Meat Market on Van Molan Street at 11:22AM, exited his postal vehicle and opened the rear door of the vehicle. A red Buick LaCrosse, Texas NBB3894, registered to Myesha Franklin, known to be Burns' girlfriend, then backed up to the rear of the postal vehicle and Garcia-Powell loaded the 10 parcels into the trunk of the Buick.

At 11:24AM, surveillance units activated their lights and sirens and moved in on Garcia-Powell and the occupants of the Buick, later identified as Burns, driver, and Myesha Franklin, passenger. The ten parcels were seized from the trunk of the Buick. Recovered from the center console of the Buick was a Sig Sauer P365 9mm handgun, serial number 66A783046. Also seized from the Buick were 3 cell phones, 2.7 grams of marijuana, and $1,237.06 in U.S. currency.

Both Burns and Garcia-Powell were taken into custody. Burns refused to speak with investigators without the presence of an attorney. Garcia-Powell was advised of his constitutional rights, waived those rights in writing and agreed to speak with investigators.

Garcia-Powell said that he had met Burns in 2019 when he was approached by Burns while delivering mail on his route. According to Garcia-Powell, Burns asked if he could have parcels mailed to people on Garcia-Powell's route. Garcia-Powell said that Burns paid him $100 per delivery, but also added that he did not get paid every time. Garcia-Powell said that Burns would leave his payment in one of the mailboxes on Garcia-Powell's route. Garcia-Powell said that Burns did not pay him at the time of delivery but would notify him later where the money had been placed.

Garcia-Powell said that he knew Laron Curtis from the Masonic Lodge, where they were both members. He said that Curtis would pick up parcels for Burns, but it was Burns who would pay him.

Garcia-Powell said that he thought that the parcels contained THC cartridges or marijuana. Garcia-Powell said that Burns asked him for addresses on his route, which Garcia-Powell gave him. Garcia-Powell said that he used 16 different addresses for the deliveries.

Garcia-Powell said that he usually received texts from Burns when parcels were inbound. If the parcels were delayed for some reason, Burns would text him the parcel tracking numbers. Garcia-Powell said that he scanned the parcels as "delivered" wherever he was when he met with Burns or Curtis. Garcia-Powell said that the parcels did not have Burns' or Curtis' name on them and that he should not have delivered the parcels to them.

Garcia-Powell identified photos of Burns, Curtis, and their vehicles. Garcia-Powell said that if he was not at work to divert the packages, they would be delivered to the address on the parcel. Garcia-Powell said that this happened to approximately 12 parcels around Memorial Day 2020, and Burns was angry about this.

Garcia-Powell said that in the beginning Burns only sent 1 package through at a time, but by the end it was as many as 15. Garcia-Powell stated that he had made approximately $600 from this scheme over the previous year.

On September 15, 2020 Garcia-Powell submitted his resignation.

On October 19, 2020, SA Tomasino conducted an audit to compile a comprehensive list of suspected narcotics parcels which might have come through the Oak Forest Station to be delivered by Garcia-Powell. Using the parameters developed from this investigation, SA Tomasino

identified 110 suspicious parcels between September 2019 and August 2020.

In November 2020, while reviewing Garcia-Powell's cell phone, SA Tomasino discovered a series of text message between Garcia-Powell and Isiah Franklin, IV, a city carrier at the Oak Forrest Station. The texts were dated March 5-6, 2020. In the texts, Garcia-Powell requested that Franklin pick up parcels destined to be delivered on his route, and instead, bring them to him, Garcia-Powell, who was off duty at the time. SA Tomasino was able to determine through investigation that Franklin was not assigned to Garcia-Powell's route from March 5 through 6, 2020, and had to take the parcels from another carrier's assigned parcels to take them to Garcia-Powell.

### Breach of Plea Agreement

16.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Monetary Penalties, Assets and Financial Disclosures

17.   Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be

16

submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

18. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

**Financial Statement**

19. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

20. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

**Complete Agreement**

21.    This written plea agreement, consisting of 21 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

22.   Any modification of this plea agreement must be in writing and signed by all parties.

Filed at ___Houston___, Texas, on ___December 11___, 2023.

_____
Defendant

Subscribed and sworn to before me on ___December 11___, 2023.

NATHAN KYLE OCHSNER
UNITED STATES DISTRICT CLERK

By:   _____
Deputy United States District Clerk

APPROVED:

Alamdar S. Hamdani
United States Attorney

By: _____          _____
Assistant United States Attorney          Attorney for Defendant
Southern District of Texas

19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **CRIMINAL NO. H-21-268 - 3** |
| | § | |
| **LARON CLIFFORD CURTIS,** | § | |
| **Defendant.** | § | |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Attorney for Defendant

12-11-23
_____
Date

20

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

_____          12/11/23
Defendant                                                         Date

21